**OTIS CLAPP & SON, INC.,**
**Plaintiff-Appellant,**

v.

**FILMORE VITAMIN COMPANY d/b/a**
**Medique Products, Defendant-Appellee.**

**No. 83–2931.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1984.

Decided Feb. 4, 1985.

Rehearing and Rehearing En Banc Denied
March 27, 1985.

Alan S. Ganz, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for plaintiff-appellant.

James R. Sweeney, McWilliams, Mann, Zummer & Sweeney, Chicago, Ill., for defendant-appellee.

Before ESCHBACH and COFFEY, Circuit Judges and GRANT, Senior District Judge.*

COFFEY, Circuit Judge.

The plaintiff appeals not only the amount it recovered in an unfair trade competition action but also the denial of motions to supplement its complaint and to compel discovery. We affirm.

## I.

Both the plaintiff, Otis Clapp & Son, Inc. ("Otis Clapp") and the defendant, Medique Products ("Medique"), a division of the Filmore Vitamin Company, sell non-prescription pharmaceuticals in the institutional medical market. Both companies sell their pharmaceutical supplies through distributors to the end-purchasers who, typically are nurses employed in plant or office clinics. Medique entered the market in 1975 or 1976 and developed a line of pharmaceuticals that competed against many of Otis Clapp's products. At that time, Otis Clapp was an established and growing business.

Otis Clapp complained of five unfair trade practices by Medique: (1) infringement of several of its trademarks; (2) false, misleading, and deceptive comparative advertising; (3) false statements about the quality and effectiveness of Otis Clapp products and their ingredients; (4) false representations that certain Otis Clapp products did not conform to Food and Drug Administration Guidelines; and (5) the hiring of James Rose, a former Otis Clapp employee, in order that they might obtain confidential information from him.[1] Specifically, Otis Clapp asserted that FEMAIDS, Medique's menstrual relief medication, infringed Otis Clapp's trademark for FEMCAPS, also a menstrual relief medication. Furthermore, Otis Clapp objected to Medique's use of the name DISPENSER–PAK for its individual dose dispensing packaging

as an infringement of Otis Clapp's DISPENS–A–KIT trademark, used by Otis Clapp to describe similar packaging. The comparative advertising and false statement claims were based on a 1977 Medique brochure, which was used both as a sales promotion device and to interest new distributors in handling the Medique line. In addition, the literature was also given to existing Medique distributors to be disseminated to final purchasers.

Otis Clapp filed its complaint in 1978 alleging claims under Section 35 of the Lanham Act ("Act"), 15 U.S.C. § 1117, as well as state law claims for trademark infringement.[2] On January 22, 1982, the district court granted a partial summary judgment to Otis Clapp, enjoining Medique from disseminating some of its literature and making representations that Otis Clapp's cough and cold products do not conform with the guidelines of the FDA review panel for cough and cold products. Medique was also enjoined from claiming that certain Otis Clapp products did not contain an effective dosage of salicylamide.

On October 22, 1982, the defendant admitted liability under the Lanham Act and state law claims without conceding damages. The defendant's counsel informed the court that his client was without funds, could not afford to pay attorney's fees, and could not afford to respond to the plaintiff's discovery program. According to the representations made to the district court, the defendant admitted liability solely because it was financially unable to litigate the issue. Attempting to avoid both a damages hearing and supplemental proceedings under Fed.R.Civ.P. 69, the district court encouraged the parties to negotiate a settlement as to the amount of damages.

During monthly status hearings held from November 22, 1982 through February 15, 1983, the parties presented several of

---

* The Honorable Robert W. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

1. Rose was also sued for breach of contract, trade disparagement, unfair competition, and interference with the plaintiff's business rela-

tionships. The plaintiff later dropped its action against Rose.

2. Claims against Rose, the former Otis Clapp employee, were added in 1979. As was explained in note 1, *supra,* the claims against Rose were dropped.

their points of contention to the district court. The plaintiff, concerned about whether Medique had transferred its assets to another corporation, questioned whether or not it was receiving an accurate depiction of the defendant's resources or was being misled as to its ability to respond in damages. The plaintiff pointed out that in 1979, Filmore Vitamin changed its corporate name to I. Udell Associates, Inc. and transferred its packaging operations, including inventory and equipment, to a newly formed affiliate company named Filmore Vitamin, Inc. The defendant objected to the plaintiff's attempt to inquire into the defendant's assets, properly asserting that the plaintiff could discover the defendant's assets in a supplemental proceeding under Rule 69. Furthermore, the defendant repeatedly complained to the court that the plaintiff had failed to submit settlement proposals and protested that the plaintiff in fact was prolonging the litigation in order that it might force the defendant out of business. The plaintiff on frequent occasions requested the district court to schedule a trial date on the damage issues. The district court attempted to strike a balance between protecting the defendant from oppressive discovery and, on the other hand, allowing the plaintiff the opportunity to obtain sufficient information about the defendant's financial status to make an informed evaluation of the settlement offer. The plaintiff was allowed to depose Irving Udell, the principal figure of I. Udell & Associates, Inc. In addition, the defendant supplied the plaintiff with corporate documents and financial reports, and an opinion letter from a disinterested attorney who examined the financial data and concluded that Medique's corporate assets had not been siphoned off. The settlement negotiations fell apart in February 1983 when the plaintiff demanded $192,000 in settlement before the damages trial. After the failure of the settlement negotiations, the defendant filed a motion for attorney's fees pursuant to 28 U.S.C. § 1927 arguing that the plaintiff had deliberately protracted the litigation.

On February 16, 1983, the district court scheduled a trial on the damages issue for April 14, 1983. On February 25, 1983, the plaintiff filed a request for production of documents. On March 11, 1983, the plaintiff filed a "motion for clarification of defendant's identities, substitution of defendants, and to file an amendment to the complaint." According to the record, the plaintiff sought the documents from the defendant in order that they might establish that Medique's unfair trade practices were both continuing and intentional. Furthermore, the plaintiff sought documents pertaining to the defendant's sales and costs. In its motion to amend the complaint, the plaintiff requested the court to grant them leave to add comparison literature issued by the defendant in addition to the 1977 brochure attached to the complaint. Secondly, the plaintiff wished to add Irving Udell and the new Filmore Vitamin Company as defendants. The district court denied the motions noting, "the plaintiff a year ago or more recognized that—well, in fact, longer ago than that—recognized that it might have a subsequent and different claim against the defendant for conduct following the filing of the complaint." Thus, those portions of the motions directed towards conduct subsequent to the filing of the complaint were denied because "[t]here comes a time when a five-year-old lawsuit needs to get put to bed." Those portions of the motions concerning the identity of the defendants, and the attempt to add defendants, were denied because their grant would of necessity require new and lengthy discovery and thus would prolong the litigation. Specifically, the district court held that the diversion of assets question would be more appropriately resolved in a supplemental proceeding.

At the trial on damages, the plaintiff presented evidence on consumer reactions to Medique's advertising. Even though the consumers were concerned, they were not influenced enough to cease and desist from using Otis Clapp products. The plaintiff also introduced financial evidence as to Medique's sales, the cost of a curative advertising campaign, and proof of attorney's

fees in excess of $100,000. In addition, the plaintiff presented a great deal of financial evidence on its real and hypothetical growth[3] arguing that, because of the defendant's actions, it had not achieved the rate of growth that it might and should have achieved without the alleged illegal interference. The defendant, in addition to presenting evidence to rebut the allegation that its action had intentionally and willfully infringed the plaintiff's trademark, also presented financial evidence concerning the profitability of its products. Mr. Udell testified that Medique's records do not provide a basis for allocating costs and expenses among particular products; rather, Medique's cost figures were allocated across all product lines. Mr. Udell also stated that 70 percent of the selling price of his goods was attributable to the cost of producing the goods. Gary J. Schwartz, an accountant for Medique, testified that, after reviewing the financial statements of the Filmore Vitamin Company[4] and I. Udell & Associates, Inc., he found that Medique had lost money during the period beginning with the accounting year ending on April 30, 1978 through the accounting year ending on April 30, 1981. The defendant also introduced evidence establishing the net loss attributable to Medique operations.

Noting that the plaintiff failed to prove lost sales, the district court analyzed the plaintiff's proof of unrealized growth and concluded that the plaintiff's evidence failed to establish that the failure to grow as projected was caused by the defendant's actions. The district court did, however, allow the plaintiff to recover the full cost of its curative advertising campaign. As to attorney's fees, the district court commented that it "is persuaded that plaintiff has, throughout this litigation, overreacted to the impact of defendant's conduct and

that an action which should have largely sought injunctive relief became, over time, more complex and more intensively litigated than it should have been." Particularly, the district court noted that, "after the concession of liability, the costs to both parties were substantially and unnecessarily increased by plaintiff's litigation strategy." On the other hand, the district court was also "persuaded that the 'targeting' of plaintiff by defendant in its literature was in cavalier disregard of the objective truth." Furthermore, the "[d]efendant's litigation strategy, until its concession of liability, did not facilitate the resolution of the dispute." The district court concluded that the plaintiff was entitled to $20,000 in attorney's fees. Turning to the question of whether the defendant had to disgorge its FEMAIDS profits, the district court found that Medique had suffered losses from 1978 through 1981. Rather than find that the plaintiff could not recover for lost profits, the court awarded the defendant 15 percent of the amount received from the sale of FEMAIDS from 1978 through 1982.[5] The plaintiff appeals the denial of discovery, the denial of its motion to supplement the complaint and the amount of its recovery.

## II.

### A. The Procedural Rulings.

■ Our initial inquiry is whether the district court erred in denying the motion to supplement the complaint by adding post-complaint literature and additional parties. Otis Clapp argues that the addition of the post-complaint literature was necessary "to put into issue the repetition of falsehoods and misleading statements over an extended period." Relying upon Fed.R.Civ.P. 25(c),[6] Otis Clapp further ar-

---

**3.** As will be more fully explained below, the plaintiff attempted to prove what its growth should have been based upon its previous rate of growth.

**4.** Schwartz examined the statements of the old Filmore Vitamin Company, the company that became I. Udell & Associates, Inc.

**5.** The district court also granted injunctive relief which has not been appealed.

**6.** "Rule 25. *Substitution of Parties.*

\* \* \* \* \* \*

"(c) *Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless

gues that the new Filmore Vitamin Co. and Irving Udell are transferees of interests within the meaning of that rule. Furthermore, Otis Clapp argues that Fed.R.Civ.P. 18(b) [7] allows joinder of its contention of a fraudulent conveyance during the pendency of the action. Initially we note that Rule 18(b) deals only with joinder of remedies at the pleading stage of the litigation and does not govern the question of when and under what circumstances parties may supplement their complaints. Furthermore, Rule 18(b) does not compel the district court to allow the addition of a fraudulent conveyance claim because "Rule 42(b) permits the court to order separate trials whenever considerations of economy or convenience indicate it is advisable to do so. In addition, Rule 21 gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants." 6 Wright and Miller, Federal Practice and Procedure § 1591, at 823 (footnotes omitted). Similarly, substitution of a party under Rule 25(c) is within the discretion of the trial court:

"The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation."

7A Wright and Miller, Federal Practice and Procedure § 1958, at 664-65 (footnotes omitted); see e.g., Kaplan v. Joseph, 125 F.2d 602, 606 (7th Cir.1942). Denial of a

Rule 25(c) motion does not preclude the substitution of parties in actions to enforce the judgment. *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 22-28 (7th Cir.1977), *cert. denied sub nom. Beck v. Morrison Pump Co.*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). The decision of whether to delay the litigation to determine whether substitution should be allowed was within the discretion of the trial court. Because the plaintiff may pursue Irving Udell and the new Filmore Vitamin Company in proceedings to enforce the judgment, we see no reason to disturb the trial court's ruling. Further, a Rule 15(d) motion to supplement the complaint also is properly addressed to the discretion of the trial court. *Cherry v. Morgan*, 267 F.2d 305 (5th Cir.1959) (per curiam). The district court denied the motion to supplement the complaint ruling that the supplementation would raise new issues, require new discovery and necessarily prolong the litigation. Denial by the court of a motion to supplement the complaint because it would cause undue or further delay of the action when other parties are prepared to proceed is not an abuse of discretion. *Parker v. Broadcast Music, Inc.*, 30 F.R.D. 151 (S.D.N.Y.1962). Since the district court denied the motion to supplement because supplementation would raise new issues, would of necessity require new and further discovery, and postpone the impending trial, we hold that the court did not abuse its discretion.

 Otis Clapp argues that its motion to compel the production of documents was necessary "to permit a more complete resolution of this matter through the damages hearing, and to better ascertain the extent of Medique's activities." The district court

---

the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule."

\* \* \* \* \* \*

7. "Rule 18. *Joinder of Claims and Remedies.*

\* \* \* \* \* \*

"(b) *Joinder of Remedies; Fraudulent Conveyances.* Whenever a claim is one hereto-

fore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money."

allowed the plaintiff to conduct discovery as to the damages question but denied the rest of the plaintiff's discovery requests because they did not directly address the issue of damages. In denying discovery, the trial court is vested with broad discretion and will not be reversed except upon a clear showing that a denial of discovery would result in actual and substantial prejudice to the complaining litigant. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir.1977). To obtain a reversal of a district court order limiting the production of documents sought by the plaintiff, the plaintiff must show that the limitation affected his rights substantially. *Goldman v. Checker Taxi, Inc.*, 325 F.2d 853, 856 (7th Cir.1963). Because the plaintiff has failed to specify or demonstrate, much less establish, a limitation on its substantial rights, we hold that the trial court did not abuse its discretion when it denied the motion to compel the production of documents.

## B. The Relief Granted.

[8–10] "[S]ubject to the principles of equity," the Lanham Act allows the successful litigant to recover: "(1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action." 15 U.S.C. § 1117. The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party. *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir.1982). "[A]n award of little more than nominal damages would encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication. Such a method of enforcement would fail to serve as a convincing deterrent to the profit maximizing entrepeneur who engages in trademark piracy." *Id.* On the other hand, § 1117 forbids the district court from allowing recoveries that are so excessive as to amount to a penalty. Therefore, the monetary relief granted by the district court must be great enough to further the statute's goal of discouraging trademark infringement but must not be so large as to constitute a penalty. The adequacy of monetary relief awarded under the Lanham Act is reviewed under the abuse of discretion standard. *See Seven-Up Co. v. O-So-Grape Co.*, 283 F.2d 103, 106 (7th Cir.1960), *cert. denied*, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961).

■■■ To force the defendant to disgorge the profits obtained because of the infringement, the Act requires, "the plaintiff ... to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed" in determining the profit derived from the sale. The defendant may show that his infringement was not profitable. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942). Section 1117 of the Act provides that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Some courts have allowed the plaintiff to recover profits even though the defendant lost money on the theory that the plaintiff should not be prejudiced by the defendant's inefficiency. Callman, Unfair Competition, § 22.49 at 258 n. 95. Although the defendant established that he lost money, the district court determined that the plaintiff was entitled to recover lost profits. After examining the evidence as to sales and costs, the district court awarded the plaintiff fifteen percent of the defendant's FEMAIDS sales for the years in question, $13,250. The award of lost profits in the face of evidence that the defendant lost money was an exercise of the court's discretion and furthers the statute's goals by removing the profit from trademark infringements. The plaintiff fails to cite authority for his proposition that, when increasing an award of lost profits to ensure that the aims of justice are fulfilled, the district court must follow a particular mathematical formula for determining the amount due. Rather, the language of § 1117 explicitly allows the

district court to exercise its discretion, limited only by the admonition that the award may not constitute a penalty. The discretion given by the Lanham Act to increase an award of lost profits if the circumstances warrant is to be exercised by the trial court and not by the court of appeals. *Cf. Boston Professional Hockey Assoc., Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 597 F.2d 71, 78 (5th Cir.1979). Because the district court's award cannot be characterized as a penalty, we hold that the district court did not abuse its discretion in awarding $13,250 for lost profits.

■ When determining damages in an unfair trade practices case, the courts distinguish between the amount of proof needed to show "that some damages were the certain result of the wrong" and the amount of proof needed to ascertain the exact amount of damage. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 267, 66 S.Ct. 574, 581, 90 L.Ed. 652 (1946) (Frankfurter, J., dissenting on other grounds). The plaintiff is held to a lower burden of proof in ascertaining the exact amount of damages because, "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Id.* at 265, 66 S.Ct. at 580. However, the plaintiff may not recover if he fails to prove that the defendant's actions caused the claimed harm. *See, e.g., Burger King Corp. v. Mason,* 710 F.2d 1480, 1493 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).

■ The plaintiff asserted three claims for damages: (1) unrealized growth potential;[8] (2) attorney's fees; and (3) the expense of a curative advertising campaign. The plaintiff received full reimbursement for its curative advertising campaign and challenges only the court's rulings on the other two claims for damages. Initially, we turn to the claim that the defendant's activities caused the plaintiff to fail to reach its projected or anticipated growth.

In essence, the plaintiff presented a mathematical projection to demonstrate to the court what its growth would have been if the defendant had not engaged in unfair trade practices. To present an accurate estimate, the plaintiff adjusted its figures to remove the effects of inflation, price increases, and the impact of the recession on the number of hours worked by industrial workers, the ultimate consumers of Otis Clapp's products. Assuming that Otis Clapp would have grown at the rate it experienced in the past, the plaintiff established what its sales would or should have been had it actually grown at that rate. By comparing its estimated growth with its actual growth (using figures adjusted to remove the effects of inflation, price increases, and the recession), the plaintiff determined both the decrease in growth for the company as a whole and the decrease in growth of the products mentioned in Medique's literature. Finally, the plaintiff used the decline in growth figures to determine the amount of lost sales. After subtracting the estimated costs that would have been incurred had the pharmaceuticals actually been manufactured and sold, the plaintiff claimed damages of almost $4,000,000 on all products including, approximately $2,800,000 for the products that had been the subject of Medique's unfair practices.

Noting that Medique's total sales were less than half of the claimed lost sales, the district court specifically emphasized that Otis Clapp had failed to prove a single lost sale. Turning to a detailed analysis of the plaintiff's data, the district court pointed out that, in 1978, when the unfair trade practices "were pursued with full vigor," the company's overall growth rate was double the 1977 rate. Furthermore, in 1982, when the unfair practices had ceased, the growth rate was "a negative 15 percent, the only sales decline during the entire period." After similarly analyzing the figures for the individual products, the district court concluded that, "the evidence

---

**8.** Our analysis of the unrealized growth potential claim includes the claim for loss of goodwill

since both were based on the same financial evidence.

plaintiff introduced just does not lead to the conclusions plaintiff wishes this court to draw." Contrary to the plaintiff's protest that the district court held it to a too rigorous a burden of proving the amount of damages, the district court found that the plaintiff failed to prove that the defendant's conduct caused the alleged injury.

The factual determinations of district courts will not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). Although the plaintiff quibbles with some of the district court's interpretation of its data, it fails to point to a single fact that would convince this court that the defendant's actions caused the plaintiff not to meet its estimated growth rate. The fundamental flaw in the plaintiff's case is its inability to prove a single lost sale, despite an extensive discovery effort. Although Otis Clapp argues that, "there were innumerable potential customers ... [whose] ... reluctance to newly purchase defamed Otis Clapp products caused Otis Clapp's sales growth to slow down," Otis Clapp simply failed to prove that a potential customer did, in fact, fail to switch to an Otis Clapp product because of Medique's unfair trade practices. Furthermore, the assumptions on which the plaintiff's mathematical model rest are at best questionable. The plaintiff failed to produce any evidence supporting its assumption that, "it is reasonable to expect Otis Clapp to continue to grow at its historical rates." If there is no reasonable basis for believing that, but for the unfair practices, Otis Clapp would have reached its estimated growth, there is no reliable basis for determining its shortfall. Because the plaintiff failed to prove that its mathematical model of projected growth was grounded in reality, we, like the district court, hold that it failed to prove that the defendant's actions caused the decline in growth.

■ The second contested element of damages was the award of attorney's fees. Section 1117 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Exceptional cases that would justify an award

of attorney's fees are ones in which the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful. H.R.Rep. No. 93–524, 93d Cong., 1st Sess., 2 (1973); S.Rep. No. 93–1400, 93d Cong.2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad.News 7132, 7133. Prevailing defendants may also recover attorney's fees in exceptional cases. *Id.,* U.S. Code Cong. & Ad.News at 7136. Provision was made for the recovery of defendant's attorney's fees to "provide protection against unfounded suits brought by trademark owners for harassment and the like." *Id.; see e.g., Hairline Creations, Inc. v. Kefalas,* 664 F.2d 652, 654 (7th Cir.1981) (The defendant "alleged that Hairline's aggressive defense of its mark was in reality an illegal attempt to use the threat of expensive litigation to extend the reach of the mark beyond the limits granted in the registration"). Section 1117 confers a wide scope of discretion on the district court in fashioning a remedy for a trademark infringement subject to the principles of equity. *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 121 (9th Cir.), *cert. denied,* 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968). "A successful plaintiff in a trademark infringement case is not always entitled to a monetary award in addition to injunctive relief, since any award for damages is subject to the principles of equity which give the court discretion based upon a wide range of considerations." *Ramada Inns, Inc. v. Apple,* 482 F.Supp. 753, 757–58 (D.S.C.1980).

■ The district court found that, "the 'targeting' of plaintiff by defendant in its literature was in cavalier disregard of the objective truth. Plaintiff has for years been haunted by defendant's singling out plaintiff as the whetstone upon which it has unfairly sharpened its competitive weapons." We concur with the district court's judgment that the defendant's actions make this an exceptional case justifying an award of attorney's fees. On the other hand, the district court found that the plaintiff had "overreacted to the impact of defendant's conduct and that an action

which should have largely sought injunctive relief became, overtime, more complex and more intensively litigated than it should have been." Furthermore, "after the concession of liability, the costs to both parties were substantially and unnecessarily increased by plaintiff's litigation strategy." It is apparent from the quoted language that the district court felt that the plaintiff was overly aggressive in its defense of its trademark; instead of simply defending its rights, the plaintiff sought to weaken, if not mortally wound, its competitor. Rather than endorse this lunge for the jugular, the court apparently decreased the plaintiff's attorney's fees to those which it would have incurred if it had reasonably limited its response to the infringement. An award of attorney's fees under the Lanham Act is reviewed under the abuse of discretion standard. *See Maier Brewing Co., supra.* The trial court's judgment was based upon its evaluation of the culpability of the defendant, its evaluation of the injury to the plaintiff, the sincerity of the settlement negotiations after the defendant conceded liability, and the plaintiff's justification for attempting to expand the action and initiating a new round of discovery on the eve of trial. Our review of the record and the district court's analysis assures us that the award of attorney's fees advances the statute's goal of discouraging unfair competition while, at the same time, protecting competitors from harassment. Accordingly, we hold that the district court did not abuse its discretion when it awarded attorney's fees of $20,000.

The decision of the district court is AFFIRMED.