**In re PULLMAN CONSTRUCTION INDUSTRIES, INC., et al., Debtor.**

**Bankruptcy No. 87 B 6441–44.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 16, 1989.

---

Mark K. Thomas, Patrick J. Lamb, Katten, Muchin & Zavis, Chicago, Ill., for Wells Fargo.

Larry M. Wolfson, Jenner & Block, Chicago, Ill., for the Goldwyns.

Richard Friedman, Chicago, Ill., Office of the U.S. trustee.

Steven B. Towbin, Towbin & Zazove, Ltd., Chicago, Ill., for debtors.

Lawrence Fisher, D'Ancona & Pflaum, Chicago, Ill., for the Creditors Committee.

### MEMORANDUM OPINION ON MOTIONS OF WELLS FARGO FOR RELIEF FROM PRETRIAL ORDER

JACK B. SCHMETTERER, Bankruptcy Judge.

### INTRODUCTION

This case came on for consolidated trial and hearing on Debtors' Fourth Amended

---

Plan as Twice Modified, and Wells Fargo's objections thereto; and also on Wells Fargo's Motion to Lift Automatic Stay. Following a lengthy hearing the trial was almost concluded but that conclusion was delayed by illness of the undersigned. The case was reassigned temporarily to Judge Barliant of this Court pending my recovery. Wells Fargo moved on June 21, 1989, to Amend its Exhibit List and Witness List earlier filed in compliance with my Pretrial Order of March 13, 1989, on several grounds.

First, it sought to introduce for the first time into the case witnesses and exhibits (Nos. 57 and 58) to show an asserted offer of the Scott Co. to buy certain assets of Debtor conditional on Wells Fargo being able to sell same and other conditions, and the asserted acceptance thereof by Wells Fargo;

Second, in anticipation of final argument expected as to the capitalization rate in issue, the same being announced by counsel for the Creditor's Committee near the end of the trial, movant sought to introduce its new Exhibits 59, 60, and 61 as evidence on that issue; and

Third, Wells Fargo also sought to interview Debtor's customers, employees, and union representatives, to inspect Debtor's premises and tools, etc. in aid of its attempt to sell Debtor's assets to Scott Co.

In the absence of this Court, Judge Barliant heard and sustained objections to the foregoing motion which was wholly denied.

On July 7, 1989, Wells Fargo then filed before Judge Barliant the instant pending Motion for Relief from Pretrial Order. That motion again seeks to introduce witnesses and documents to establish the foregoing Scott Co. offer and response from Wells Fargo. Alternatively, Wells Fargo asked leave to make offer of proof as to the evidence being offered as to that offer and response.

Judge Barliant allowed the offer of proof to be made on that subject, and the same was made of record. He then excluded the evidence. The Motion for Relief from Pretrial order was briefed and taken under advisement pending my return to work, which happy event has now occurred.

On July 7, 1989, Wells Fargo also filed its Motion to Dismiss and Deny Confirmation of Debtor's Fourth Amended Plan. That was subsequently briefed and also taken under advisement pending ruling by this Court which is entered by separate Order entered this date.

On July 7th final evidence was received before Judge Barliant, videotaped for later review by this Court. Both sides have rested, but subject to this Court's ruling on the pending Motion for Relief from Pretrial Order. The parties are preparing Amended Proposed Findings and Conclusions on a schedule ordered by Judge Barliant, after which we will set the case for Final Argument.

For reasons set forth below, the Motion for Relief from Pretrial Order will be denied.

### DISCUSSION

Following two years of the hottest litigation this Court has experienced in any Chapter 11 proceeding, a Pretrial Order was entered March 13, 1989, setting Debtor's Plan and Wells Fargo's objections thereto for trial consolidated with Wells Fargo's most recent and pending motion to modify the automatic stay. The foregoing summary by no means covers the history of this case in which the imagination and skill of all counsel in pursuing various tactics and objections thereto has been without limit or restraint.

The Pretrial Order required the parties to exchange and deliver to the Court copies of exhibits and lists of witnesses and exhibits by May 22, 1989, in order to prevent unnecessary surprise or unfairness to the parties; to move the trial efficiently; to allow the Court to better prepare for and preside over the trial; and to achieve other purposes contemplated under Rule 16 F.R. Civ.P.

In its Motion to Amend Exhibit List and Witness List that Judge Barliant denied, Wells Fargo stated that it first contacted Scott Co. on May 25, 1989 (three days after

the Pretrial Order required such exchange) to see if Scott Co. was interested in purchasing Debtors' assets. On June 29, 1989, Scott Co. then made a conditional offer to purchase certain assets. On June 21st, Wells Fargo conditionally accepted that offer.

Among the many issues to be decided by this Court in resolving the instant matters on trial are valuation issues. At trial, both sides introduced data and expert opinion as to valuation. During that battle of the experts, one factor affecting their calculations was the proper discount rate. At trial on June 15, 1989, counsel for Creditor's Committee for the first time advised the Court that it intended to contend in final argument that the appropriate discount rate should be found to be higher than the figure included in Debtor's Disclosure Statement and testified to by Debtors' experts. Until that point, the Committee had appeared to support the Debtors' calculations. Wells Fargo now says that the Scott Co. offer that it had solicited 20 days before the Committee's counsel made that announcement should be admitted and weighed in computing the appropriate discount rate.

The offer of proof made in the record by Wells Fargo included the statement of Joseph Gugliemo, a Scott Co. officer, and testimony by one of the Wells Fargo experts, Mr. Bail. Mr. Gugliemo stated *inter alia* his keen interest in acquiring certain assets of Debtors on a going-concern basis, and his confidence that Scott Co. could continue the Debtor's operations based on the Scott Co. experience and present customer base. By offer of proof, Mr. Bail said that he has not seen the Scott Co. conditional offer, but can say that "this gives us some market test to the value, it certainly does add some indication of value for the assets of the company," (July 7, 1989, Tr. 11) and that Scott Co. is offering some undefined discount to the value of the assets in question (Tr. 13). He also opined in effect that the Scott Co. offer tended to support an appropriate discount rate between 16% and 18% (Tr. 14–16).

Wells Fargo essentially argues that the proffered evidence is relevant as response to the possible final argument over discount rate, so as to support their expert's views. The evidence would be relevant to that issue if indeed it were probative of "some market test to the value" and "some indication of value for the assets of the company."

Were there now a contract between Scott Co. and Wells Fargo for sale and purchase of certain of Debtors' assets from Wells Fargo if Wells Fargo defeats the Plan and obtains stay modification, that would at least give Wells Fargo a factual basis for its motion (subject to other questions discussed below). Then it would at least have a basis for arguing that it offers prohibitive evidence of market value of assets involved in the contract.

However, there is no such contract. Wells Fargo Exhibit 57 is the June 19th offer from Scott Co. It is conditional not merely on Wells Fargo prevailing in this Court but also on funding of the purchase by Wells Fargo or another bank on designated terms and, on possible price adjustment upon future ascertainment from Debtors records of construction contracts (as to existing revenue, cost to date, cost to compete, profit to date, and unrealized profits).

The Wells Fargo "acceptance" letter of June 21, 1989, was a conditional acceptance. The following conditions were all to be satisfied by July 31, 1989:

1. All bankruptcy court orders necessary to carry out the sale were to be entered by that date and not be subject to any further appeal.

2. By that date Wells Fargo and the new corporate entity to be formed by Scott Co. to purchase the assets were to have entered into definite agreements with respect to the purchase and requisite financing, in form acceptable to the parties and their counsel.

3. The sale shall be consummated by that date, unless delay is due to failure of Wells Fargo.

Wells Fargo asked that Scott Co. approve its "acceptance" letter by signature, but the Court's copy appended to the motion does not show such signature.

From the foregoing, from the Statement of Mr. Gugliemo presented by way of offer of proof, and from Wells Fargo original motion to Amend Exhibit List and Witness List, one fact stands out: The Scott Co. has no intent of entering into a definitive agreement until it can see the Debtors' books; speak to its employees, officers, and customers; and take all other usual steps that diligent and careful businessmen take before they make and acquire substantial new assets. None of those preliminary steps appear on this record to have been taken. Consequently no contract between Scott Co. and/or its proposed new corporation and Wells Fargo has been presented here. And certainly the July 31st "expiration date" has not been met and no offer or agreement is presented on this record to extend that date or modify any of the other conditions imposed by Scott Co. and Wells Fargo.

In short, all that Wells Fargo has demonstrated is a keen interest by it and Scott Co. to explore the possibility of sale at a price and terms still conditional on many events, steps, analyses and agreements by both of these parties that remain to be completed. This Court cannot agree that the so-called "offer" and "acceptance" letters present probative or useful evidence of market value of the assets in question. Because that is so, we need not reach the objections of Debtors to the affect that what might be valued by a definitive sale contract would be value of the note and warrants to be received by Wells Fargo from a sale to Scott Co. not value of the assets.

Moreover, the circumstances underlying the creation of the proposed evidence are striking. On the record presented, Wells Fargo waited throughout two years of hot litigation until the parties had exchanged most documents and witness names on the eve of trial before it approached Scott Co. It did not list Scott Co. as a potential witness, and it did not during the long trial preceding this Court's illness announce on the record that it was negotiating with Scott Co. and might have some new developments to offer into evidence. It certainly never sought a trial continuance to explore a possible sale to Scott Co. Having seen its opponent's exhibits, theories, and calculations, it chose to litigate with use of expert testimony as to value without any third party market valuation or notice that market valuation or sale value might be offered.

In short, Wells Fargo sought to create market data during the trial, and now seeks to use it without any opportunity to Debtors to test it through discovery. Were a final contract having prohibitive value tendered, these circumstances would still give the Court great concern and would be grounds for denying the motion.

Wells Fargo was not prompted to its belated contact with Scott Co. by the belated warning by Committee Counsel of his contemplated final argument on discount rate. Wells Fargo had contacted Scott Co. before that happened. Nor does the possibility of final argument by Committee Counsel for a discount rate different from that opined by the experts justify a whole new subject of possible asset sale to be belatedly interjected into the case on a theory that it indirectly supports the experts' reference to a so-called "peer group" of other companies to arrive at a discount rate.

Indeed the facts and circumstances presented smack of an effort to hold one card close to the chest throughout trial and to develop new evidence during the trial for later interjection into the case. Since that card is not the trump it is contended to be, we need not explore details as to communications with the Scott Co. and the origin of those contacts. In order for Wells Fargo to obtain relief from the March 13, 1989 Pretrial Order to add witnesses and exhibits on the proffered matters at this late date, it bears the burden of demonstrating that the modification is necessary to prevent "manifest injustice." *See* F.R.Civ.P. 16(e); *Smith v. Rowe*, 761 F.2d 360, 365 (7th Cir.1985); *cf. Matter of Delagrange*,

820 F.2d 229, 232–33 (7th Cir.1987) (amendment allowed where there was no prejudice to opposing party and amendment would have minimal impact on administration of the case).

However, Wells Fargo has not demonstrated that "manifest injustice" would result if the offered testimony and related exhibits are not received in evidence by this Court. Further, all pertinent considerations weigh heavily against its offer. The relevant factors for the Court to consider are:

1. The surprise to the party against who the witness was to testify;

2. The ability of the party to cure that surprise;

3. The extent to which allowing the testimony would disrupt the trial;

4. The explanation for the party's failure to name the witness; and

5. The importance of the testimony. *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 369–70 (4th Cir.1986). *See also Smith v. Rowe, supra*, 761 F.2d at 365.

To begin with, Wells Fargo obviously knew prior to its May 25, 1989, contact with Scott Co. of the possibility that it would seek to open negotiations with that company. No excuse exists, and none is even offered by Wells Fargo, to explain why it delayed until this late date to advise the Court and other parties of the possibility that the Bank would offer evidence pertaining to such negotiations, and why it did not seek delay in trial so as to develop such negotiations.

Wells Fargo now wants to give the case a significant new turn after Pullman has rested its case in chief. If Wells Fargo believed that an anticipated offer from Scott Co. was a useful approach to ascertain going concern value of Debtors assets, the time to make that clear was prior to the start of the hearing and not at this late date.

Further, allowing Wells Fargo to put on evidence of the purported offer and purported acceptance would significantly disrupt and delay the end of the trial and create substantial additional expense due to the extensive discovery that Debtors, their shareholders and the Committee would be required to take of Scott Co. and Wells Fargo. Moreover, additional expert and factual testimony would likely be required.

Finally, the importance, or even the relevance or admissibility of Scott's conditional offer (proposed Exhibit 57), and the Bank's conditional "acceptance" (proposed Exhibit 58), is not demonstrated. As previously noted the Wells Fargo purported "acceptance" of the conditional offer is specifically made subject to the parties entering into unspecified "definitive agreements" sometime in the future. *See* Proposed Exhibit 58 at 2, par. 2. Therefore, at this time, there is no binding and enforceable contract between Wells Fargo and Scott Co. for Scott Co. to purchase Pullman's assets through a foreclosure sale or otherwise. *See Empro Manufacturing Co., Inc. v. Ball–Co. Manufacturing, Inc.*, 870 F.2d 423, 425 (7th Cir.1989) (".... as a matter of law parties who make their pact 'subject to' a later definitive agreement have manifested an (objective) intent not to be bound ...."). *See also A/S Apothekernes Lab v. I.M.C. Chemical Group Inc.*, 873 F.2d 155 (7th Cir.1989). The "offer" and "acceptance" are each subject to many unresolved contingencies. Consequently, the proposed transaction has no significant probative value.

Wells Fargo's primary argument is that because the proposed offer from Scott Co. did not exist until after the filing of pretrial materials in May, 1989, "... and, indeed, subsequent to the adjournment of this trial on June 15th ...," Wells Fargo should be allowed to supplement its case by new evidence. *See* Wells Fargo Motion at pars. 2, 7. *Cf.* F.R.Civ.P. 15(d). This argument is entitled to little weight in light of the factors which the Seventh Circuit considers relevant to the issue. *See Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1338 (7th Cir.1985) ("We find no abuse of discretion in the district court's determinations that additional discovery might be required by Twin Disc's new claim, that it would be 'manifestly unfair' to require Big Bud to meet these last minute allegations at trial ..., and that the

trial should not be postponed to accommodate Twin Disc's new cause of action."); *accord Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985) ("Since the district court denied the motion to supplement because supplementation would raise new issues, would of necessity require new and further discovery, and postpone the impending trial, we hold that court did not abuse its discretion.").

If the Wells Fargo's motion were to be granted, conclusion of the consolidated hearing would be delayed at least three months to allow for the relevant discovery that Debtors would be entitled to engage in. The administrative expense to the Debtors' estates caused by this additional discovery would be substantial. In addition, substantial further delay would be required for the Bank and Scott Co. to negotiate a binding and definitive sale contract which Wells Fargo would then presumably offer as an indication of the value of Debtors assets and appropriate discount rate. Such delay could impair the Debtor's ability to maintain their current financing commitments to fund their reorganization and would compel updating and review of much of the evidence heretofore admitted.

Wells Fargo provides no justification for this additional delay, inconvenience and expense except for the purported "... importance of value evidence to the determinations this court must make ..." *See* Wells Fargo Motion at par. 5. As previously discussed, however, the relevance and admissibility, let alone importance, of Wells Fargo's new evidence is doubtful.

Finally, in this regard, the timing and production of Wells Fargo's new evidence has always been exclusively within Wells Fargo's control. It was Wells Fargo that approached Scott Co. with the idea of selling the Debtors' assets. Wells Fargo has had more than two years to solicit offers for the Debtor's business. There was no reason for it to wait until after the pretrial materials were submitted and discovery was closed to commence negotiations with Scott Co., other than as a deliberate strategy or for lack of diligence. Wells Fargo's conduct, be it either an act of commission or omission, does not invite judicial leniency at the Debtor's expense.

Wells Fargo also suggests that both the Debtors and the Creditors' Committee offered evidence that was not disclosed in the pretrial submissions. *See* Wells Fargo Motion at pars. 5, 7. Additionally it argues that the Creditors' Committee has changed its position by now contending that the appropriate discount rate should be higher than 18 percent. *Id.* at par. 6. Those arguments have no merit.

First, neither the Debtors nor the Committee attempted to call any witness whose names were not known by Wells Fargo in sufficient time for the witness to be deposed at some point. Second, neither the Debtors nor the Committee offered evidence on matters not previously put in issue by the parties' pretrial submissions. Third, to the extent previously unidentified exhibits were introduced by the Debtors or by the Committee, Wells Fargo either stipulated to or had no objection to the admission of those exhibits, or could not show prejudice.

While Wells Fargo argues that it should be afforded the "same relief" as the other parties, *see* Wells Fargo Motion at par. 5, its Motion does not seek the "same relief." Instead it seeks to call witnesses not previously identified and to introduce exhibits which were not the subject of any pretrial submission by Wells Fargo and which comprise an entirely new subject matter and set of issues. Further, the Debtors do not stipulate and, in fact, object to the Bank's unwarranted request for relief.

Wells Fargo's appeal to this Court's sense of fairness and evenhandedness to support the request for relief from the Pretrial Order is unfounded. There is no "precedent" in this case of allowing the parties to shift tactics and strategy during the course of the hearing. Therefore, it would not be "decidedly, unfair and improper to not allow the same relief to Wells Fargo," as it contends. *See* Wells Fargo Motion at par. 5.

CONCLUSION

For the foregoing reasons, this Court is in agreement with Judge Barliant's ruling denying the Wells Fargo Motion to Amend Exhibit List and Witness List as to the proposed offer and acceptance between Scott Co. and Wells Fargo, and to allow on the record but not to admit into evidence the testimony and documents proffered by way of offer of proof. For the same reasons, the pending Motion for Relief from Pretrial Order is denied.

The original Wells Fargo Motion to Amend Exhibit List and Witness List also sought to offer Mr. Bail as a rebuttal witness along with Wells Fargo Exhibits 59, 60, and 61. While Judge Barliant's denial of the Motion may have denied that as well, he quite properly allowed such evidence at the trial session on July 7, 1989. Such evidence taken then (other than the offer of proof) will stand and be considered by this Court, effectively mooting any issue with respect to the wording of Judge Barliant's Order.

By separate order, the instant Motion for Relief from Pretrial Order is this day denied.