**KFC CORPORATION, Plaintiff,**

v.

**Ole J. LILLEOREN, et al., Defendants.**

**Civ. A. No. C 91–0440–L(A).**

United States District Court,
W.D. Kentucky
at Louisville.

May 5, 1993.

**1192**

Charles J. Cronan, IV, Scot A. Duvall, Stites & Harbison, Louisville, KY, for plaintiff.

Edgar A. Zingman, Stephen Richie Price, Wyatt, Tarrant & Combs, Louisville, KY, for defendants.

### MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action is submitted to the Court on the parties' posthearing memoranda concerning the question of damages sought by the plaintiff, KFC Corporation ("KFC"). Prior to the hearing on the damages issue, the parties stipulated to certain facts.

The parties first stipulated to the "gross revenues" generated by each of the restaurants in this action and to the expenses defendants incurred in operating those restaurants after plaintiff terminated the franchise agreements until the dates of closure. Stipulations at ¶¶ 2–3. Next, they stipulated that plaintiff's attorneys' fees and expenses were reasonable and were incurred in this litigation. Finally, they stipulated to unpaid royalties after termination through the dates of closure, to unpaid late payment charges applicable to the royalties, and to the dates when no national or local "co-op" advertising payments were made. Stipulations at ¶¶ 5 through 7.

These stipulations and supporting exhibits disclose that the restaurants incurred losses of more than $202,000 after KFC terminated the franchises, and further, that the restaurants paid more than $176,000 to defendant Lilleorens as rent and administrative fees. KFC contends that it should receive an award of 15 percent of defendants' gross revenues, relying primarily on *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738 (7th Cir.1985). In *Clapp* defendant conceded liability under Section 35 of the Lanham Act ["Act"], 15 U.S.C. § 1117, and under state law claims without conceding damages. For years defendant had unfairly competed with the plaintiff by disseminating information and making representations that plaintiff's products did not conform with the guidelines of the FDA review panel for cough and cold products. Defendant had wrongfully claimed that certain products sold by the plaintiff did not contain an effective dose of salicylamide.

The Court of Appeals affirmed the district court's award of 15 percent of defendant's sales for the years in question under the Act, stating that awards of "nominal damages would encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication." *Id.* at 744 (citation omitted). The Court also stressed that the Act "forbids the district court from allowing recoveries that are so excessive as to amount to a penalty." *Id.*

■ The Court also affirmed the district court's determination that the acts of the defendant made the case "exceptional" under the Act and thus subject to an award of attorneys fees, here set in the amount of $20,000. As to lost sales, the district court declined to award any damages on that issue as plaintiff had failed to show that it had lost sales because of defendant's conduct. Turning to the instant case, we believe an award of 10 percent of gross revenues is both equitable and large enough to advance the Act's goal of discouraging trademark infringement, but not so large as to constitute a penalty.

■ KFC next contends that it is entitled to $27,616.02 because it was deprived of royalties and did not receive the customary con-

tributions to advertising. In *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562 (11th Cir.1986), defendants entered into a license agreement with Ramada Inns ["Ramada"] in 1977. The motel license with Ramada terminated in late 1983, but the motel continued to use Ramada's signage and graphics for a period of at least four months after notice of termination. Ramada sued under the Lanham Act, and the district court awarded plaintiff $17,993.24 for past due license fees, $94,441.08 in liquidated damages, $20,000 in attorneys fees, and trademark infringement damages trebled from $47,165 to $141,995.

As to the trademark infringement damages, the district court arrived at the original figure by adding $23,610 for the six months holdover period when Gadsden continued to use Ramada's marks, $3,550 interest on the lost franchise fees, $5,000 needed to develop a new franchise, and $15,000 for advertising to restore Ramada's good reputation. In affirming this award, the Court of Appeals noted that "much of Ramada Inns' award represented franchise fees or 'royalties' lost during the infringement period. This was entirely proper." *Id.* at 1565.

In the instant case, this Court holds that KFC is entitled to recover the amount of royalties it would have received during the holdover period by the defendants. Defendants claim that as they paid 2.8 percent of the 4.0 percent of gross revenues owed KFC, the remaining balance is $8,815.20, an amount awarded to KFC. However, KFC is denied the right to recover any charges for advertising as it did not enter into advertising that would have benefited defendant during the holdover period.

█ KFC also seeks treble damages as to the amount this Court is awarding for the failure to receive the customary royalty fees. The holdings in *Ramada Inns v. Gadsden, supra,* and *Gorenstein Enterprises v. Quality Care–USA,* 874 F.2d 431 (7th Cir.1989), are ample authority for treble damages.

█ KFC also seeks more than $80,000 in attorneys fees, relying on two different theories to justify such an award. First, the parties' agreements specified that defendants would pay attorneys fees to KFC if it prevailed entirely in any litigation brought to enforce the franchise agreements. Defendants argue that KFC did not prevail "entirely" in that this Court held that Section 20.3 of the Franchise Agreement requires KFC to prove its costs were reasonable. In so doing, the Court refused to award KFC costs for an original and copy of depositions taken in this action. That particular cost item, however, is but a very small part of the award plaintiff seeks. It also must be recalled that the Court awarded KFC not only its court costs, with the exception of the copies of the depositions, but all of its other costs, excluding attorneys fees.

We believe that KFC prevailed entirely on its claims for injunctive relief, claims under the Act, and claims under the Franchise Agreements themselves. While we realize that the prevailing entirely language should be strictly construed, we are of the opinion that the de minimus disallowance of the cost of a deposition nullifies the prevailing entirely clause.

█ In addition, attorneys fees may be awarded under the Act. Title 15 U.S.C. § 1117 provides that in exceptional cases courts may award reasonable attorneys fees to the prevailing parties. As stated by the Seventh Circuit in *Clapp, supra,* "[e]xceptional cases that would justify an award of attorney's fees are ones in which the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." 754 F.2d at 746.

Although defendants' conduct in this case was neither malicious nor fraudulent, it nonetheless may be described as deliberate or willful. Defendants continued to operate under the KFC trademark for a substantial period after notice of termination had been received and even after the action had been instituted. The only defense with a semblance of merit was defendants' claimed reliance on an oral statement by a KFC manager although defendants knew that an oral statement would not suffice under the franchise agreements providing that the terms of the agreement could not be altered by oral acts of either party.

In determining that defendants' conduct was deliberate and willful, the Court has taken notice of the fact that defendants took 207 days after termination of the Dalles franchise agreement to close that restaurant and 80 additional days to de-image the restaurant. Furthermore, defendants not only refused to acknowledge infringement of KFC's trademarks, they also refused to stop using those trademarks or to de-image those trademarks until this Court entered an injunction and subsequently also entered orders requiring compliance.

Although *Clapp, Ramada Inns,* and *Gorenstein, supra,* all permit an award of attorneys fees, this Court is particularly impressed by the *Ramada Inns* decision in that its facts are quite similar to the instant case, that is, a franchisee illegally holds over after its franchise is terminated.

The Court recognizes that the amounts awarded here are substantial and that defendants' resources are far less than those of KFC. On the other hand, defendants have not cited a case under the Lanham Act where the relative size of the parties' resources was considered. In *Clapp,* although counsel for defendant claimed his client was without funds, the Court of Appeals noted that defendant's assets had not been siphoned off and that plaintiff's $192,000 settlement demand prior to trial had been rejected. The total award in *Clapp* was 15 percent of gross revenues plus an attorney fees of $20,000. Although gross revenues is not set out in the opinion per se, it does refer to plaintiff's damages claim of close to $4,000,000 and approximately $2,800,000 for the products that had been the subject of defendant's unfair practices.

A judgment in accordance with this opinion has been entered this day.

### ORDER

This action having been submitted to the Court on the parties' posthearing memoranda on damages sought by the plaintiff, and the Court having considered said memoranda and having entered this day its memorandum opinion, accordingly, after due consideration,

IT IS ORDERED that plaintiff recover from defendants 10 percent of gross revenues of the restaurants operated by defendants after they received notice of termination of their franchise.

IT IS FURTHER ORDERED that plaintiff recover from defendants the sum of $26,445.60, representing $8,815.20 unpaid royalties, which would have been paid to plaintiff during the period of holding over by defendants, multiplied by three (3).

IT IS FURTHER ORDERED that plaintiff recover from defendants attorneys' fees in the amount of $80,885.30.

This is a final and appealable order and there is no just cause for delay.