468 F.Supp. 370 (1979)
Charles B. BLACKMAR, Plaintiff,
v.
David B. LICHTENSTEIN et al., Defendants.
No. 76-685.
United States District Court, E. D. Missouri, E. D.
March 30, 1979.
*371 Albert H. Hamel, William I. Rutherford, Mark D. Mittleman, John Gianoulakis, Carroll J. Donohue, St. Louis, Mo., for plaintiff.
Robert S. Allen, Harold C. Gaebe, Jr., Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
This matter is before the Court following a hearing held on January 15, 1979. Said hearing resulted from a remand of this cause by the United States Court of Appeals for the Eighth Circuit, 578 F.2d 1273, for the purpose of determining the real party in interest herein. From the evidence adduced at said hearing, the Court finds the relevant facts to be as follows:
In the spring of 1976, plaintiff Charles B. Blackmar was asked to become sole trustee of two trusts: Liberty's Investment for Employees, an employees' profit sharing trust, and The Incentive Trust, a profit sharing trust for management employees of Liberty Loan Corporation. On April 19, 1976, by resolution of the Executive Committee of the Board of Directors of Liberty Loan Corporation, Blackmar was appointed sole trustee of the two trusts.
The assets of the two trusts were almost exclusively invested in the stock of Liberty Loan Corporation. As of May 31, 1976, the two trusts owned 200,245 shares of the common stock of Liberty Loan Corporation, as well as some additional shares of preferred stock of said corporation. Blackmar was advised of this information before he accepted the appointment as trustee; he was further advised that as a result of the stock concentration he might incur an obligation as a trustee to initiate litigation against former trustees for breaches of fiduciary duties. After appointment, Blackmar received legal memoranda which had been prepared by counsel for Liberty which set forth possible claims against said former trustees.
In June and July of 1976, counsel for Blackmar indicated to counsel for Liberty that Liberty might be joined as defendants in litigation. Counsel for Liberty repeatedly expressed doubts about the merits and *372 validity of Blackmar's claims and legal theories, as well as the soundness of joining Liberty. Counsel for Liberty argued that joinder of said corporation would be imprudent and would not be in the best interests of the trust beneficiaries, since such litigation might injure the trusts' investments in the stock of Liberty.
On July 10, 1976, Blackmar presented a statement of his counsel in the amount of $11,259.55 to Liberty for payment. At the time, Blackmar conceded that said sum was in excess of the sum which he had been authorized to expend without approval of the management of Liberty. On July 30, 1976, Blackmar directed a letter to the Board of Directors of Liberty requesting additional authorization of the sum of $35,000.00 "to advance the pending litigation to the pretrial stage". On August 5, 1976, Blackmar wrote a letter to the Vice-President of Liberty in which he confirmed a discussion in which Liberty agreed to advance the attorney's fees and expenses
. . . with the understanding that if I am successful in recovering monies either as the result of a judgment or settlement of the claims asserted in the pending litigation, that all such advances will be timely reimbursed to the Company, subject to the orders of the court, if any.
On July 29, 1976, Blackmar instituted this litigation, naming as defendants David B. Lichtenstein, Sr., William A. Gerard, Lyle S. Woodcock, Sidney N. Held, David B. Lichtenstein, Jr., Oscar H. Love, Carl A. Algren, and American National Bank. The individual defendants were all former trustees; the Bank had loaned money to the trusts.
On November 9, 1976, counsel for plaintiff conferred with counsel for Liberty. Following said meeting, plaintiff's counsel advised Liberty's counsel by letter of November 11, 1976 that Blackmar was considering joining Liberty as a defendant in the litigation.
On November 29, 1976, Blackmar met with Mr. Thomas Slaughter and Mr. Martin Starr of Liberty Loan Corporation. The letter of November 11, 1976 was not discussed; in fact, Mr. Slaughter had not read the letter at that time. The conversation concerned the fees of plaintiff's counsel and the lack of progress of the suit. Mr. Starr suggested that Blackmar meet with the Board of Directors of Liberty on the following day to discuss fees and expenses.
On November 30, 1976, Blackmar met with his attorneys. It was decided that the letter of November 11, 1976 should not be raised unless it was brought up by someone on Liberty's behalf. Stephen Friedrich, president of Liberty, was unaware of the letter at that time. Mr. Slaughter had not yet read the same. Blackmar met with the Board of Directors on November 30, 1976. Fees and expenses were discussed; counsel for plaintiff estimated fees and expenses of $150,000.00 to $200,000.00 to process the litigation through trial and appeal. One of the directors asked plaintiff's counsel about the liability of the then-current Board members. Eventually, it was indicated by counsel for plaintiff that he did not foresee any liability on the part of the present directors. After plaintiff's counsel left the meeting, they realized that perhaps Mr. Friedrich was unaware of the November 11, 1976 letter. Mr. Friedrich was made aware of said letter by Mr. Slaughter shortly after the meeting adjourned.
The trust agreements provide in relevant part that the trustee shall serve for one year or until a successor is appointed and qualified; such appointment is to be made each year at the meeting of the Board of Directors which is held closest to December 1. The Board of Liberty took no action at the November 30, 1976 meeting with respect to the reappointment of Blackmar as trustee; said matter was not discussed at all.
On December 9, 1976, a meeting was held at Liberty's request to discuss the questions raised by the November 11, 1976 letter. Liberty requested that the letter of November 11, 1976 be withdrawn. Blackmar was asked to consider the arguments against filing a claim against Liberty. Nevertheless, on January 12, 1977, the amended complaint, which was filed with this Court, was *373 delivered to Liberty; said complaint joined Liberty as a defendant. Blackmar received a telephone call from Mr. Friedrich that day asking for confirmation of the decision to file the amended complaint. Blackmar confirmed the same. Friedrich then asked for Blackmar's resignation. Blackmar replied that it would not be proper for him to resign but stated that he would understand if the Board wanted to replace him and would not contest the same. A mailgram was sent by Friedrich that evening, confirming the telephone conversation.
A meeting was held on January 14, 1977 at which Blackmar and his counsel were present. Again, the reasons for and against the filing of the amended complaint were discussed. It was Liberty's position that there was a strong case of liability with regard to the claim of breach of fiduciary duty but that a securities claim was without merit. The costs of litigation would be increased by a securities claim. The fortunes of the trusts were tied to that of the company's. Liberty was then under tight credit arrangements with various lenders and was technically in default; if a securities claim was pursued against Liberty, the lenders might not have continued their support and could have forced the company into bankruptcy. The existence of a securities claim could only reduce the value of Liberty stock, thus reducing even further the value of the assets of the trusts. Were the company forced into bankruptcy, the employee-beneficiaries would lose their jobs. Moreover, Liberty would be in the awkward position of financing litigation against itself, thus possibly creating further legal liability on its part.
Blackmar felt obligated to join Liberty as a defendant because he felt the claim against the company was valid and that he had a duty to look to all sources for funds for the beneficiaries of the trust. There was only one million dollars available in an insurance policy to cover any liability on the part of former directors. Blackmar felt that a judgment far in excess of said sum was possible and he doubted the financial ability of the individual defendants to pay any additional sums. Also, the trusts were indebted to Liberty; it would further benefit the beneficiaries, should they prevail against Liberty, because such indebtedness could be avoided. If Liberty were to be put into bankruptcy, Blackmar wanted to have a liquidated claim.
On January 13, 1977, the Executive Committee of the Board of Liberty adopted a resolution removing Blackmar as trustee of both trusts and appointing movants Knox and Best. Movant John W. Knox had been, prior to May 20, 1977, the head of the Insurance Accounting and Claims Department of Liberty Loan Corporation. He had also been vice president of various companies and agencies which were owned or controlled by Liberty. At no time had he been an officer of Liberty. Movant Everett B. Best has been, at all times relevant herein, the corporate Secretary of Liberty Loan Corporation. Both movants are beneficiaries of the trusts herein.
Movants filed, on January 10, 1978, a suit in the Circuit Court of St. Louis County, Missouri naming the former trustees as defendants. Said suit has been stayed pending ruling from this Court on the matters presented herein.
On September 26, 1977, this Court dismissed plaintiff's complaint for failure to state a claim. The amended complaint had been lodged with the Court. After reviewing the same, the Court concluded that the amended complaint would not survive a motion to dismiss. The Court of Appeals commented that this was a "a tenuous and uncertain area of federal securities law". Blackmar v. Lichtenstein, 578 F.2d 1273, 1276 (8th Cir. 1978).
Both Blackmar and Friedrich are honorable men. Mr. Friedrich has done an excellent job of reversing Liberty's precarious financial situation. Mr. Blackmar is a highly respected lawyer whose integrity and conscientiousness can not be doubted. Movants Knox and Best, although associated with Liberty have indicated, by the filing of the state court suit, their intention to pursue claims on behalf of the trusts' beneficiaries.
*374 Rule 17(a), Federal Rules of Civil Procedure, provides that "[e]very action shall be prosecuted in the name of the real party in interest". Plaintiff Blackmar contends that ERISA, 29 U.S.C. § 1001 et seq. governs the determination herein. He argues that a fiduciary must act "solely in the interest of the participants and beneficiaries". 29 U.S.C. § 1104. He argues that a civil action is authorized pursuant to 29 U.S.C. § 1132(a)(3) to enforce the provisions of ERISA and that a fiduciary must take reasonable action to prevent of remedy a breach of trust by another fiduciary. 29 U.S.C. § 1105. The question presented herein is simply whether Blackmar's removal, and movants' appointment, were proper and whether the effect of the same was to require movants' substitution as the real parties in interest. Although the Court agrees with many of plaintiff's statements concerning ERISA, the Court can not agree that ERISA controls herein. Cf., 6 Wright and Miller, Federal Practice and Procedure § 1544. Even assuming, however, that ERISA did apply to the determination of the real party in interest, the Court concludes that ERISA would not preclude substitution of movants herein.
In Curb and Gutter District No. 37 of the City of Fayetteville, Arkansas v. Parrish, 110 F.2d 902 (8th Cir. 1940), the court was confronted with a situation in which a trustee was appointed for the purpose of obtaining federal diversity jurisdiction. The court upheld the action, stating:
. . . under the circumstances herein, the motive which may have actuated or induced the bondholders to select a nonresident trustee is immaterial. The appointment and qualification of the plaintiff trustee was real and bona fide. It was not merely colorable or feigned. No wrongful act was perpetrated in invoking the jurisdiction of this Court.
The relevant trust provisions state that the trustee shall serve for one year or until a successor is appointed and qualified. They further provide that the appointment shall be made each year at the meeting of the Board of Directors which is held closest to December 1. The Court fails to perceive the impropriety of the actions herein. Surely, plaintiff Blackmar can not contend that once the December 1 date passes, the Board of Directors is powerless to appoint a new trustee until the next December 1 approaches. Thus, the Court must conclude that Blackmar's removal and movants' appointment is valid and binding herein unless there has been an abuse of the power vested in the Board of Directors. See Rafferty v. Parker, 241 F.2d 594 (8th Cir. 1957); Bogert, Trusts and Trustees § 520, § 524 (rev. 2d ed. 1978).
Title 29 U.S.C. § 1108(c)(3) permits the appointment of a trustee who is an officer, employee, agent or other representative of a party in interest. Thus, the Court can not conclude that the appointment of movants is improper simply because of movants' connection with Liberty. Blackmar argues, however, that his removal and movants' appointment was not done "solely in the interest of the participants and beneficiaries" of the trusts, 29 U.S.C. § 1104, because
(1) it was obviously primarily for Liberty's benefit and (2) it was done out of motives which at best involved severe conflicts of interest.
Letter of January 22, 1979 filed herein by Blackmar's counsel. The Court disagrees with this interpretation of the facts. Although Blackmar's removal was caused by the filing of an amended complaint in which Blackmar had named Liberty Loan Corporation as a defendant, Blackmar's removal was not accomplished primarily for Liberty's benefit. Severe problems had plagued Blackmar's litigation from the outset. Indeed, this Court has held that the complaint failed to state a claim of violation of the securities laws. The presence of a securities law claim had greatly increased the price of the litigation and has enormously increased the length of time in which any possible benefit to the trusts might be realized. The addition of Liberty as a defendant placed Liberty in the exceedingly difficult position of financing litigation against itself; yet, without Liberty's financial support, *375 litigation to pursue the beneficiaries' claims would probably not be possible. Although this Court does not doubt the sincerity of Blackmar's decisions herein, it is equally clear that those decisions involved serious financial burdens upon Liberty with little chance of financial reward to the beneficiaries. Accordingly, the Court can not conclude that the decision to remove Blackmar as trustee was not reached with the interest of the participants and beneficiaries in mind. Assuming arguendo that any improprieties did occur, appropriate steps may be taken to protect any legal rights violated. Cf., United States v. Byrum, 408 U.S. 125, 142-43, 92 S.Ct. 2382, 2393, 33 L.Ed.2d 283 (1972) ("Although Byrum had reserved the right to remove the trustee, he would have been imprudent to do this when confronted by the trustee's complaint against his conduct. A successor trustee would succeed to the rights of the one removed."); Nedd v. United Mine Workers of America, 556 F.2d 190, 197 (3d Cir. 1977) ("Where the trustee may sue and wrongfully fails to do so, the beneficiary may sue the trustee[s] as well as the party or parties the trustee failed to sue.").
The trust instrument gave the Board of Directors the power to appoint movants as Blackmar's successors. The Court has found no abuse of that power herein. Accordingly, the Court concludes that movants Knox and Best are the real parties in interest and that their motion for substitution must be granted. Hamilton Trust Co. v. Cornucopia Mines Co. of Oregon, 223 F. 494 (9th Cir. 1915); Banks v. Employers' Liability Assr. Corporation, Limited, of London, England, 4 F.R.D. 179 (W.D.Mo.1944); Repetto v. Walton, 313 Mo. 182, 281 S.W. 411 (1926).
Blackmar has filed a request for instructions which seeks a determination by this Court of numerous issues raised as a result of the actions taken herein. The Court declines to decide those issues. The case before the Court involves a claim of violation of the securities laws, and pendent claims of breach of fiduciary duty. This Court will not, on the basis of such litigation, embark upon a determination of rights and liabilities of various individuals on issues only tangentially related to this cause. Blackmar asserts that jurisdiction exists under ERISA. That may well be so. Jurisdiction herein, however, is not premised upon ERISA. Should Blackmar desire a judicial resolution of the disputes between the parties, he may institute appropriate litigation. A request for instructions in a securities lawsuit is not, however, the proper forum for resolution of these issues.
The Court of Appeals reversed all rulings herein and remanded this cause to this Court for a determination of the real party in interest. This Court will grant movants' motion for substitution. Movants will be given ten days in which to file amended pleadings, if any, and defendants shall be given twenty days thereafter in which to answer or otherwise respond to the complaint.