Charles B. BLACKMAR, Trustee of Liberty's Investment for Employees and Charles B. Blackmar, Trustee of Incentive Trust, Appellant,

v.

David B. LICHTENSTEIN, Sr., William A. Gerard, Lyle S. Woodcock, Sidney N. Held, David B. Lichtenstein, Jr., Oscar H. Love, Carl A. Algren and American National Bank in St. Louis, Appellees,

John W. Knox and Everett B. Best, Appellees.

No. 79–1301.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1979.

Decided Aug. 23, 1979.

---

William I. Rutherford, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, Mo. (argued), Albert H. Hamel and Mark D. Mit-tleman, St. Louis, Mo., on brief, for appellant.

John Gianoulakis, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo. (argued), Carroll J. Donohue, Robert J. Domrese and Mark G. Arnold, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., on brief, for appellees.

Before LAY, ROSS and HENLEY, Circuit Judges.

LAY, Circuit Judge.

This suit was originally brought by Charles B. Blackmar, as trustee of two insolvent trusts, against former trustees David B. Lichtenstein, Sr., William A. Gerard, Lyle S. Woodcock, Sidney N. Held, David B. Lichtenstein, Jr., Oscar H. Love, Carl A. Algren, and the American National Bank in St. Louis, a bank allegedly controlled by the former trustees.

In 1955 Liberty Loan Corporation (Liberty) formed an employee profit sharing trust, Liberty's Investment for Employees (LIFE). A second profit sharing trust, the Incentive Trust, was formed by Liberty the following year for Liberty's management employees. Substantially all of the assets of both trusts were invested in Liberty stock. LIFE had acquired 174,682 shares of Liberty stock. Its total cost in acquiring Liberty stock was $3,538,765.06. The Incentive Trust had acquired its 25,563 shares of Liberty common stock at a total cost of $544,363.01. On occasions the trusts borrowed money from Liberty using the proceeds to make additional purchases of Liberty stock.

During the early 1970's Liberty experienced some serious financial reversals. Beginning in 1973, Liberty was forced to make some large write-offs of finance receivables from the asset side of its balance sheet. When this occurred the value of Liberty stock plunged and the trusts' assets depreciated considerably. The outstanding loans exceeded the value of the stock held by both trusts thus making them insolvent. New management took over Liberty in 1975. The former trustees of the two trusts

resigned when they ceased to occupy management positions at Liberty.

The two employee benefit plans, in compliance with 29 U.S.C. § 1102(a)(1), were established and maintained pursuant to a written instrument. Liberty was named as the plan administrator of both trusts. The board of directors of Liberty appointed the trustees for each of the plans in accordance with Article IV of the trust instruments. Under Article IV the regular appointment of a trustee is to be made at the meeting of the board of directors held nearest the date of December 1st.

Liberty contacted Charles B. Blackmar, a practicing attorney and a noted law professor, in the Spring of 1976 and requested him to become the sole trustee of both trusts. Blackmar was informed of the concentration of trust assets in Liberty stock, as well as the insolvency of the trusts. He immediately initiated this action against the former trustees for breaches of fiduciary duties.

This suit was filed on July 29, 1976. The complaint consisted of four counts, two counts of securities violations, a 10(b) count and a 10(b)5 count, and two counts of breach of fiduciary duty brought by way of pendent jurisdiction. During the summer of 1976, Blackmar's legal counsel contemplated bringing Liberty into the suit as a defendant. When Liberty's attorneys heard of the plan, they expressed doubts about the merits and validity of a suit which would include Liberty as a defendant. Liberty's counsel argued that the joinder of Liberty was imprudent and would not be in the best interest of the trust beneficiaries because it would injure both trusts' investments in Liberty stock.

In a letter dated November 11, 1976, from Blackmar's counsel to counsel for Liberty, a claim was asserted against Liberty. On November 30, Blackmar and his counsel met with Liberty's board of directors. Fees and expenses were discussed and at the board's request Blackmar's counsel estimated the cost of a trial and appeal to be between $150,000 to $200,000.

Subsequently, the president of Liberty, Mr. Friedrich, learned of the November 11 letter. Thereafter, on December 9, and December 17, Blackmar again met with Liberty officials. On January 12, 1977, Blackmar's counsel prepared a letter on behalf of Blackmar and enclosed a copy of a proposed amended complaint which named Liberty as a defendant. This letter was hand delivered to Liberty during the afternoon of January 12, 1977. The following day, January 13, 1977, the executive committee of Liberty's board adopted a resolution which recited that Blackmar was removed as trustee of both trusts and that Mr. Best and Mr. Knox, Liberty employees, were to be appointed as trustees of the Incentive and LIFE trusts respectively.[1] Blackmar was informed that Best and Knox had been appointed trustees. Blackmar's counsel was informed to take no further action, perform no further services and incur no further expenses on behalf of the trusts or their beneficiaries until further notice from the new trustees.

The newly appointed trustees then made a motion in the present action pursuant to Fed.R.Civ.P. 25(c) for substitution of parties. Blackmar immediately filed a motion for instructions with the district court. Instead of ruling on these motions, the district court granted the motions to dismiss which has been previously filed by all defendants in the case. The court found that no valid claim for relief had been pled under the security laws and refused to exercise pendent jurisdiction on the state claim. Blackmar appealed to this court. *Blackmar v. Lichtenstein*, 578 F.2d 1273 (8th Cir. 1978). This court held that it was necessary for the district court to determine the real party in

---

1. Mr. Knox was in charge of the Insurance Accounting and Claims Department of Liberty and he was also vice-president of various life insurance companies and agencies owned or controlled by Liberty at the time of his appointment in 1977. He resigned his employment with Liberty effective May 20, 1977. Mr. Knox is a substantial beneficiary of the LIFE trust. Similarly, Mr. Best is employed by Liberty as the corporate secretary and he is a substantial beneficiary of the Incentive Trust.

interest before ruling on the defendants' motion to dismiss. We reversed and remanded for further proceedings.

On remand the district court granted the motion for substitution, holding that Blackmar was no longer a proper party plaintiff; the district court again declined to rule on Blackmar's motion for instructions.[2] This appeal followed.

Blackmar contends that the district court erred in holding that Liberty could remove him as trustee and appoint Mr. Knox and Mr. Best as successor trustees. Blackmar specifically contends that Liberty has violated its fiduciary duty by removing Blackmar in order to preclude filing a suit against it. He further contends that the district court erred in failing to rule on his motion for instructions and his motion to join Liberty for purposes of the motion for substitution and application for instructions.

■ The primary issue is whether Blackmar has standing to challenge Liberty's appointment of the new trustees for the LIFE and the Incentive Plan trusts.

■ We reject Blackmar's claim and affirm the district court's ruling. The trust instrument provides for the appointment of trustees on an annual basis. Under the common law of trusts, the trust instrument controls the appointment of trustees, absent legislation dictating otherwise. *Raffety v. Parker,* 241 F.2d 594 (8th Cir. 1957); 2 A. Scott, Law of Trusts § 108.2 (3d ed. 1967); *cf. Blassie v. Kroger Co.,* 345 F.2d 58, 67 (8th Cir. 1965) ("a fiduciary, after his removal or resignation, does not have sufficient official interest to authorize him to seek appellate review of an adverse judgment . . . .").

The Restatement (Second) of Trusts § 108 (1959) provides:

If a trust is created and there is no trustee or if the trustee, or one of several trustees, ceases for any reason to be trustee, a new trustee can be appointed . .

(b) by the person, if any, who by the terms of the trust is authorized to appoint a trustee.

Furthermore, Restatement (Second) of Trusts § 108, Comment f (1959) specifically states:

*Terms of the trust.* A power to appoint trustees conferred by the terms of the trust can be exercised only under the circumstances and in the manner provided by the terms of the trust. (Emphasis in original.)

■ Blackmar contends 29 U.S.C. § 1001, et seq., the Employee Retirement Income Security Act, (ERISA), has modified the common law. While ERISA does modify the common law to a certain extent, there is no provision which takes the power of appointment away from the administrator where such power has been validly placed in his hands.

■ The legislative history demonstrates that the trust instrument is to be followed unless it is inconsistent with the fiduciary requirements set out in ERISA.

These salient principles place a twofold duty on every fiduciary: to act in his relationship to the plan's fund as a prudent man in a similar situation and under like conditions would act, and to act consistently with the principles of administering the trust for the exclusive purposes previously enumerated, *and in accordance with the documents and instruments governing the fund unless they are inconsistent with the fiduciary principles of the section.* (Emphasis added.)

S.Rep. No. 93–406, 93rd Cong., 2d Sess. ——, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 4838, 4866.

Section 403(a) of ERISA states:

[T]rustee or trustees shall be either named in the trust instrument or in the plan instrument described in section 1102(a) of this title or appointed by a person who is a named fiduciary, . . .

There are no exclusionary clauses which condition the appointment of a trustee on a showing that ERISA has not been violated.

---

2. *Blackmar v. Lichtenstein,* 468 F.Supp. 370 (E.D.Mo.1979).

Sections 501 and 502 of ERISA contain its penalties and enforcement procedures. Section 502 also identifies who may bring a suit if any of the provisions are breached. Those who may bring a civil action according to the Act are (1) a participant or beneficiary, (2) the Secretary of Labor, or (3) a fiduciary. 29 U.S.C. § 1132.

Once Blackmar's successor trustees, Knox and Best, were appointed, he ceased to be a fiduciary and no longer had the capacity to sue for violations which may have occurred under this title.

Blackmar's argument that Liberty has violated its fiduciary duty under ERISA by displacing him in order to preclude a suit being filed against Liberty is not germane to the issue. If Liberty is in collusion with the successor trustees for an illegal purpose the successor trustees may be held liable if they fail to carry on with any fiduciary obligations under the trust. Blackmar's own argument recognizes this; he volunteers to step down to allow the appointment of some independent person to take his place as trustee in order to prevent Liberty from controlling Knox and Best and dismissing the lawsuit. Thus he really does not complain about his removal, but challenges the refusal of his successor trustees to include Liberty in this lawsuit and their stated intention to dismiss the securities action in federal court. This clearly overlooks the fact that if Liberty or the present trustees have violated the provisions of ERISA the beneficiaries or the Secretary of Labor can bring a civil action to properly protect the trusts.

Adequate protection is afforded the beneficiaries under Section 502. This court cannot deem Blackmar a fiduciary, though he once was, and allow him to bring a suit in a fiduciary capacity where the trust instrument provided for a method of appointing trustees and that method was followed. In short, Blackmar no longer has an interest in this suit.

Blackmar's motion for application for instructions as trustee is moot in view of the district court's ruling that he is not a real party in interest. *Cf. Four Star Publi-*

*cations, Inc. v. Erbe*, 304 F.2d 872 (8th Cir. 1962) (where former public official who was no longer in office was held not to have standing).

Additionally, the district court was correct in denying Blackmar's application for fees and costs for services under the trust in the present suit. This claim is not germane to the original complaint or proceedings in the district court. This ruling is without prejudice, of course, for Blackmar to bring a separate civil suit concerning his fees and costs.

JUDGMENT AFFIRMED.