39 F.3d 650
 63 USLW 2302, 30 Fed.R.Serv.3d 1068,
18 Employee Benefits Cas. 2537,
Pens. Plan Guide P 23903H
 Gary CORBIN, Plaintiff-Appellant,
v.
Karl BLANKENBURG; John Cruz; Charles Furlotte; Robert
Kuschel; Joseph Laughhunn; Robert Ledbetter; David
Margolis; David McEachin; Robert Stephens; Jerome Wilson;
Robert Udell, Present or Former Trustees of the Pattern &
Model Makers Association of Warren & Vicinity Pension Fund
(Defined Benefit); Mid-Continental Claim Service and
Administrators, Inc.; Gary Novara; and Laurence Breskin,
Defendants-Appellees.
 No. 92-1540.
 United States Court of Appeals,
Sixth Circuit.
 Reargued June 15, 1994.
Decided Nov. 4, 1994.
 
 A. Read Cone, III (briefed) and R. Ian Hunter (argued and briefed), Dean & Fulkerson, Troy, MI, for plaintiff-appellant.
 Leo Nouhan (briefed), Lorrey Michela (argued), H. David Kelly, Jr., and Ronald A. Weglarz, Novara & Tesija, Southfield, MI, for defendants-appellees.
 Before: MERRITT, Chief Judge; and CELEBREZZE, KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER and DAUGHTREY, Circuit Judges.
 NELSON, J., delivered the opinion of the court, in which MERRITT, C.J., and KENNEDY, JONES, MILBURN, GUY, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER and DAUGHTREY, JJ., joined. CELEBREZZE, J. (pp. 655-58), delivered a separate dissenting opinion, in which KEITH and MARTIN, JJ., joined, with BOYCE F. MARTIN, Jr., J. (p. 658), also delivering a separate dissenting opinion.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 Where a trustee commences a lawsuit in his fiduciary capacity and later resigns from office, a successor trustee will normally be allowed to step into the plaintiff's shoes and take over the prosecution of the action; the resignation of the original trustee is not deemed to abate the lawsuit without possibility of revival. The question presented in the case at bar is whether the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001 et seq., requires a different result with respect to trustees of employee benefit plans governed by that statute.
 
 
 2
 The district court answered the question in the affirmative. The present action, commenced in federal court by an ERISA trustee who was authorized by statute to bring the suit, was dismissed for want of jurisdiction following the trustee's resignation from office. Dismissal was ordered notwithstanding the pendency of a motion to substitute as plaintiff a successor trustee who was prepared to go forward with the litigation.
 
 
 3
 We think that the dismissal was unwarranted. ERISA, as we read it, does not mandate abatement of the action under the circumstances presented here. We shall therefore reverse the order of dismissal and direct that the successor trustee be substituted as plaintiff.
 
 
 4
 * Alleging that he was a trustee of a defined benefit pension plan established in accordance with the requirements of Secs. 402 and 403 of ERISA, 29 U.S.C. Secs. 1102 and 1103, plaintiff Gary Corbin brought suit against a group of defendants that included, among others, nine former trustees and two current trustees. Mr. Corbin's complaint, which asserted claims for breaches of fiduciary duty that were said to have caused substantial losses to the pension plan, was filed in the United States District Court for the Eastern District of Michigan. Federal question jurisdiction was asserted on the basis of Sec. 502 of ERISA, 29 U.S.C. Sec. 1132, which authorizes ERISA fiduciaries to bring civil actions in federal court. After an amended complaint was filed, the defendants filed an answer in which they admitted plaintiff Corbin's status as a fiduciary and admitted that the district court had subject matter jurisdiction by virtue of ERISA.
 
 
 5
 The action was commenced in May of 1991. Extensive discovery proceedings ensued, and the defendants eventually filed a voluminous motion for summary judgment.
 
 
 6
 Effective December 20, 1991--a date prior to the filing of the defendants' summary judgment motion--Mr. Corbin resigned his trusteeship. He was replaced in February of 1992 by a man named Paul Gard.
 
 
 7
 On March 19, 1992, the defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(h)(3), Fed.R.Civ.P. The theory of the defendants' motion was that Mr. Corbin had lost standing to continue the lawsuit when he resigned as trustee and that the district court irretrievably lost subject matter jurisdiction once Mr. Corbin ceased to qualify, under 29 U.S.C. Sec. 1132, as a person entitled to bring this type of action.
 
 
 8
 On March 24, 1992--three working days after the filing of the defendants' motion to dismiss--Mr. Corbin moved to substitute Paul Gard as plaintiff. The motion was accompanied by an affidavit in which Mr. Gard swore that he had succeeded Mr. Corbin as trustee on February 25, 1992; that he (Gard) desired to pursue the allegations of the amended complaint on behalf of and for the benefit of the pension plan; and that he was prepared to act as party plaintiff. The defendants immediately objected to the substitution on the ground that there had been no "transfer of interest" from Corbin to Gard within the meaning of Rule 25(c), Fed.R.Civ.P., a rule that allows the court, upon motion, to direct substitution of the person to whom an interest has been transferred.
 
 
 9
 Two days after the filing of the motion to substitute Mr. Gard as plaintiff, the district court heard oral argument on the defendants' motion to dismiss. At the conclusion of the argument the court announced its decision from the bench. The gist of the court's oral ruling was that although Plaintiff Corbin had possessed standing to bring the suit in May of 1991, when he was still a plan fiduciary, he lost his standing as a fiduciary when he resigned his trusteeship the following December; that with the plaintiff's loss of standing, the district court immediately lost subject matter jurisdiction over the case; that the subsequent motion to substitute Mr. Gard as plaintiff should be "ignore[d]" by the court, notwithstanding that "Mr. Gard has standing under ERISA to bring a claim," because jurisdiction had been lost before Mr. Gard even became a trustee; that Rule 25(c) "cannot be used to restore jurisdiction once it is lost," cf. Rule 82, Fed.R.Civ.P., and the lawsuit was abated by Corbin's resignation unless the action was one that survived as a matter of substantive law, cf. Hilbrands v. Far East Trading Co., 509 F.2d 1321, 1323 (9th Cir.1975); and that while the court had "no quarrel" with Blackmar v. Lichtenstein, 468 F.Supp. 370 (E.D.Mo.1979), aff'd, 603 F.2d 1306 (8th Cir.1979), where successor trustees were substituted as plaintiffs in a lawsuit that had been brought by a profit-sharing plan trustee prior to his removal as trustee, Blackmar was not dispositive because jurisdiction had not been predicated on ERISA there.[1] A written order of dismissal was entered on April 1, 1992, and the plaintiff perfected a timely appeal.
 
 
 10
 A divided panel of this court affirmed the dismissal. A petition for rehearing en banc was subsequently granted, the panel's judgment thereupon being vacated. The matter has been briefed and argued before the full court, and it is now ripe for decision.
 
 II
 
 11
 If Gary Corbin had not been a plan fiduciary when this lawsuit was originally filed, he would have had no authority to bring the action under ERISA in the first place. See Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co., 700 F.2d 889, 891-92 (2d Cir.), cert. denied, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983), holding that an ERISA action may be brought only by a member of one of the categories of people (the Secretary of Labor, a plan participant, a plan beneficiary, a plan fiduciary, or (for suits against the Secretary) a plan administrator) specifically named in 29 U.S.C. Sec. 1132. And if the action had been brought by a person not statutorily authorized to bring it, the absence of subject matter jurisdiction could not have been cured by substituting an authorized plaintiff for the unauthorized plaintiff. "The longstanding and clear rule is that 'if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim.' " Pressroom Unions, 700 F.2d at 893 (quoting Pianta v. H.M. Reich Co., 77 F.2d 888, 890 (2d Cir.1935)).
 
 
 12
 In the case at bar, however, jurisdiction was not lacking at the commencement of the suit. As a plan fiduciary, Gary Corbin was unquestionably authorized by 29 U.S.C. Sec. 1132(a) to bring the action. The district court unquestionably had subject matter jurisdiction ab initio, and the issue presented here was thus similar to that presented in Blackmar v. Lichtenstein, 603 F.2d 1306 (8th Cir.1979): whether abatement of an action properly commenced by an employee benefit plan trustee is required when the trustee leaves office.
 
 
 13
 As far as what the Supreme Court has referred to as "the common law of trusts" is concerned, see Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985), it is hornbook law that an action brought by a trustee "is not ordinarily abated by his failure to continue in his office." 1 C.J.S., Abatement and Revival Sec. 111(a). When a trustee party leaves office, "an action is ordinarily revived in the name of the successor representative." 1 Am.Jur.2d, Abatement, Survival, and Revival, Sec. 121. Congress could have prescribed a different rule for ERISA trustees, of course, but it did not do so. Nothing in 29 U.S.C. Sec. 1132 or any other section of ERISA suggests that a civil action brought by an ERISA trustee is personal to the particular individual who held the office when the suit was filed and must therefore be abated, without possibility of revival in the name of another representative, when the original trustee leaves office.
 
 
 14
 The declaration of policy adopted by Congress in enacting ERISA indicates, on the contrary, that Congress would have looked askance at any abatement rule calculated to leave plan participants and beneficiaries high and dry if a plan trustee who has brought an action on their behalf against other fiduciaries subsequently leaves office for one reason or another. "It is hereby declared to be the policy of this chapter," Congress said in 29 U.S.C. Sec. 1001(b), "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." An abatement rule of the sort adopted by the district court in the instant case seems particularly difficult to square with the legislative policy where, as here, a new lawsuit commenced either by the successor trustee or by individual participants or beneficiaries suing in their own right would undoubtedly be met with a statute of limitations defense.[2]
 
 
 15
 As emphasized by Justice Marshall, who wrote for the Supreme Court in Central States, Congress found that "the continued well-being and security of millions of employees and their dependents are directly affected by these [employee benefit] plans." 472 U.S. at 569, 105 S.Ct. at 2839 (quoting 29 U.S.C. Sec. 1001(a)). Congress was concerned to see that workers who had obtained vested pension rights actually received what they had been promised, and to this end "Congress invoked the common law of trusts to define the general scope of [plan fiduciaries'] authority and responsibility." 472 U.S. at 570, 105 S.Ct. at 2840. And just as the common law of trusts is relevant in assuring that the responsibilities of plan fiduciaries are not given too narrow a compass, we take it that the common law of trusts is relevant in assuring "ready access to the Federal courts" on behalf of those whose well-being and security Congress wished to protect. Under the common law of trusts, to repeat, abatement of an action commenced by a trustee in his fiduciary capacity is not favored when the trustee leaves office and a successor trustee is available to be substituted as plaintiff.
 
 
 16
 If abatement of the action commenced by Gary Corbin as a fiduciary is difficult to square with the policies of the common law and the policies adopted by Congress in ERISA, it is equally difficult to square with the policies embodied in the Federal Rules of Civil Procedure.
 
 
 17
 Although the plaintiff in this case ceased to be a real party in interest as of December 20, 1991, and thus had no standing to prosecute the action after that date, Rule 17(a) provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ... joinder or substitution of, the real party in interest; and such ... joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." (Emphasis supplied.) Here the motion to substitute the successor trustee as plaintiff was filed only three working days (five calendar days) after the defendants' objection to the predecessor trustee's standing--and three or five days, in this context, was hardly unreasonable.
 
 
 18
 It is true, as the district court said in its oral decision, that a procedural rule cannot be used to restore jurisdiction once it is lost. But subject matter jurisdiction was not irretrievably lost the moment Gary Corbin resigned his trusteeship, and "[s]ubject matter jurisdiction, once it validly exists among the original parties, remains intact after substitution." Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir.), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). As the Fifth Circuit said in Ransom, citing Chief Justice Marshall's opinion in M'Knight v. Craig's, Adm'r, 10 U.S. (6 Cranch) 183, 187, 3 L.Ed. 193 (1810), "[a] substituted party steps into the same position of the original party." Id.
 
 
 19
 When a successor fiduciary steps into the shoes of a predecessor who, acting in a fiduciary capacity, has brought a lawsuit in a court vested with jurisdiction over the subject matter of the suit, the "stepping in" relates back to the time when the original party had standing to sue. No other conclusion is possible, given the statement in Rule 17(a) that "substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."[3]
 
 
 20
 The relation back doctrine has likewise been adopted in Rule 15(c): "An Amendment of a pleading relates back to the date of the original pleading when ... (2) the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading...." If in the case at bar the district court had granted the motion to substitute the successor trustee as plaintiff vice the original trustee, therefore, the amendment naming the new plaintiff would necessarily have related back to the date of the original complaint. Relation back would have occurred, under Rule 15(c)(2), because the claim being asserted would not have been changed.
 
 
 21
 Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Justice does so require in this case--at least it does if Congress meant what it said in the findings and declaration of policy enacted into law with the adoption of ERISA.
 
 
 22
 The order of dismissal is REVERSED, and the case is REMANDED to the district court with instructions to grant the motion for substitution.
 
 
 23
 CELEBREZZE, Circuit Judge, dissenting.
 
 
 24
 I have no quarrel with the majority's position that ERISA provides no automatic rule of abatement for suits upon the resignation of trustee plaintiffs. Likewise, I do not take issue with the majority's lengthy recitation of hornbook trust law. I respectfully dissent solely on procedural grounds. I do not believe the proper question is whether ERISA mandates automatic abatement, but rather whether the plaintiff's lack of standing during the pendency of this action deprived the district court of subject matter jurisdiction. I believe that it did. I do not, however, suggest that the action had to automatically cease, regardless of the circumstances, upon the trustee's resignation.
 
 
 25
 In the instant case, I would style the issues thusly: 1) though plaintiff properly commenced his action while he was a fiduciary, could he proceed with the action after the effective date of his resignation; and 2) could a successor trustee be substituted for the former trustee after his resignation for the purpose of recapturing standing to proceed with the action.
 
 
 26
 With regard to the first issue, it is axiomatic that "[a] plaintiff must maintain standing throughout all stages of his litigation." City Communications, Inc. v. City of Detroit, 888 F.2d 1081, 1086 (6th Cir.1989), citing Karcher v. May, 484 U.S. 72, 78-81, 108 S.Ct. 388, 391, 98 L.Ed.2d 327 (1987). A trustee is a fiduciary with a right to bring suit as described by ERISA Sec. 502, 29 U.S.C. Sec. 1132. Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Division, 987 F.2d 376, 380 (6th Cir.1993); Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 14 (2nd Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992). See Sec'y of Dep't of Labor v. King, 775 F.2d 666, 668 (6th Cir.1985). It follows logically that a former fiduciary has no standing to commence such an action because a former trustee no longer has an interest in the fund. Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d at 14-15. As the majority concedes, the plaintiff in the instant case lost his standing upon the effective date of his resignation as trustee. This must be so because a former trustee is no longer a fiduciary,[1] and 29 U.S.C. Sec. 1132(a)(3) requires the action to be maintained by a fiduciary. Thus, plaintiff's lack of standing deprived the district court of subject matter jurisdiction. Flournoy v. Trust Company of Columbus (In re Weaver ), 632 F.2d 461, 463-64 n. 6 (5th Cir.1980). See American Federation of Gov't Employees v. United States Dep't of Justice, 738 F.2d 742, 748 (6th Cir.1984). Moreover, parties cannot stipulate to or waive issues of jurisdiction. Flournoy v. Trust Company of Columbus (In re Weaver ), 632 F.2d at 463-64 n. 6; United States v. Blanco, 844 F.2d 344, 349, n. 4 (6th Cir.1988), cert. denied, 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988); Agrashell, Inc. v. Hammons Products Co., 352 F.2d 443, 447 (8th Cir.1965). Thus, though plaintiff properly commenced his action while he was a fiduciary, he could not proceed with the action after the effective date of his resignation.
 
 
 27
 We next consider whether a successor trustee could be substituted for the former trustee after his resignation for the purpose of recapturing standing to proceed with the action. FED.R.CIV.P. 25(c) provides for the substitution of parties upon transfer of interest:
 
 
 28
 In the case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party....
 
 
 29
 A district court may, in its sound discretion, substitute a party where a transfer of interest has occurred. Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 154 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992); Bauer v. Commerce Union Bank, Clarksville, Tenn., 859 F.2d 438, 441 (6th Cir.1988), cert. denied, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989); Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 743 (7th Cir.1985); Prop-Jets, Inc. v. Chandler, 575 F.2d 1322, 1324 (10th Cir.1978).
 
 
 30
 I take issue with the majority opinion because I do not believe that a transfer of interest automatically necessitates the substitution of parties in all cases. See Bamerilease Capital Corp. v. Nearburg, 958 F.2d at 154; Bauer v. Commerce Union Bank, Clarksville, Tenn., 859 F.2d at 441. Giving a court discretion to substitute a successor interest is vastly different from saying that the court must, upon transfer of interest, substitute the successor party. Normally, upon a transfer of interest, FED.R.CIV.P. 25(c) has no effect upon the continuation of an action even where the court, in its discretion, rejects a substitution.[2] In the instant case, however, the action simply could not proceed because the plaintiff had lost standing to continue as of the effective date of his resignation from the board of trustees. Plaintiff lost standing specifically because, as a former fiduciary, he no longer had an interest in or ties to the fund. Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d at 15. Thus, plaintiff no longer had any interest to transfer at the time he moved the court for substitution. Since a substituted party steps into the shoes of the predecessor party, the successor trustee also lacked standing to proceed with the action. Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir.1971), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). See Anspec Co. v. Johnson Controls, Inc., 922 F.2d 1240, 1247 (6th Cir.1991). Thus, the substitution in this case could not, and did not, cure the jurisdictional defect.
 
 
 31
 I likewise note that a trial court is obliged to evaluate standing at the time it is challenged. City Communications, Inc. v. City of Detroit, 888 F.2d at 1086, citing Golden v. Zwickler, 394 U.S. 103, 108-10, 89 S.Ct. 956, 959-61, 22 L.Ed.2d 113 (1969). In the instant case, the defendants challenged plaintiff's standing in their motion to dismiss dated March 19, 1992. Plaintiff resigned on December 20, 1991 and Gard was appointed his successor on February 25, 1992. Plaintiff, however, did not attempt to cure his lack of standing until he filed the motion to substitute on March 24, 1992, five calendar days after defendants' motion to dismiss for lack of standing and three months after the effective date of his resignation. Thus, on the date defendants challenged plaintiff's standing in the motion to dismiss, the plaintiff did not have standing to proceed. The majority makes much of its belief that a five day period to cure standing is not unreasonable. I am unaware, however, of any reasonableness exemption which would provide jurisdiction for a plaintiff without standing to proceed with a case for three months without any attempt to cure the defect.
 
 
 32
 The majority focuses on the fact that Corbin was empowered to bring his suit as an ERISA Sec. 502, 29 U.S.C. Sec. 1132(a)(3) fiduciary.[3] The majority concedes, however, as does Corbin, that he was no longer an ERISA Sec. 502, 29 U.S.C. Sec. 1132 fiduciary as of the effective date of his resignation from the pension plan board. Accordingly, the district court, upon motion of the defendants, dismissed plaintiff's suit pursuant to FED.R.CIV.P. 12(b)(1) and (h)(3), which provide dismissal for lack of subject matter jurisdiction upon suggestion of a party. A district court is compelled to dismiss a suit, upon suggestion of a party or otherwise, over which, as here, it does not entertain subject matter jurisdiction at the time of the challenge. Trent Realty Associates v. First Federal Savings & Loan Ass'n of Philadelphia, 657 F.2d 29, 36 (3rd Cir.1981); Rauch v. Day & Night Manufacturing Corp., 576 F.2d 697, 701 (6th Cir.1978). Thus, the district court clearly did not err by dismissing the plaintiff's claim for lack of subject matter jurisdiction as it was obliged to do.
 
 
 33
 The majority also promotes a novel theory that "... subject matter jurisdiction was not irretrievably lost the moment Gary Corbin resigned his trusteeship, and '[s]ubject matter jurisdiction, once it validly exists among the original parties, remains intact after substitution.' " Majority opinion p. 654, quoting Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir.), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).
 
 
 34
 The majority, however, mistakenly fails to acknowledge that the language of Ransom clearly requires that subject matter jurisdiction remains intact after substitution only where it already "validly exists." In the instant case, there was no subject matter jurisdiction to preserve at the time the substitution was attempted. The majority attempts to circumvent this problem by its use of what it terms the "relation back" doctrine to contrive jurisdiction. There is no dispute that "[a] substituted party steps into the same position as the original party." Ransom v. Brennan, 437 F.2d at 516. The majority, however, opines that the " 'stepping in' relates back to the time when the original party had standing to sue." Majority opinion p. 654.
 
 
 35
 Though the majority applies its "relation back" doctrine to the case at bar, my research reveals that the doctrine appears to be used exclusively in the context of FED.R.CIV.P. 15 amendments to pleadings. See Allgeier v. United States, 909 F.2d 869, 872 (6th Cir.1990); United States v. Casualty and Surety, 359 F.2d 521, 523 (6th Cir.1966). The majority provides no authority supporting the use of that doctrine in the context of Rule 17 or 25 substitutions.
 
 
 36
 The "relation back" doctrine is used in the context of FED.R.CIV.P. 15 amendments of pleadings. It is logical that when pleadings are amended, the amendments must necessarily "relate back" to the original pleadings. Conversely, the majority's assertion that the "relate back" doctrine has been adopted by FED.R.CIV.P. 17 is completely unsubstantiated. The FED.R.CIV.P. 17(a) mandate that substitution "shall have the same effect as if the action had been commenced in the name of the real party in interest" tells us nothing about "relating back" questions of jurisdiction.
 
 
 37
 Rather, the question in this case focuses on the substitution of a successor trustee pursuant to FED.R.CIV.P. 25(c). The majority fails to provide any support for the proposition that the FED.R.CIV.P. 15 "relate back" doctrine must, or even should, apply to FED.R.CIV.P. 25 substitutions. I feel that the application of the relation back doctrine to jurisdictional determinations is a dangerous course which will create a plethora of problems in the judicial process. Logically, if every jurisdictional problem could be cured by relating the successor's standing to the commencement of the suit, there would be no need for rules delineating the time and manner of substitutions. Thus, by adopting the position of the majority, we undermine the integrity of the judiciary to determine its own jurisdiction by transferring to the parties the power to manufacture and recapture jurisdiction at will.
 
 
 38
 While the majority may not fully agree with the district court's determination, it does not necessarily follow that the district court abused its discretion by denying plaintiff's motion to substitute.[4] A district court abuses its discretion where it improperly applies the law or uses an erroneous legal standard. Black Law Enforcement Officers Ass'n v. City of Akron, 824 F.2d 475, 479 (6th Cir.1987). A district court can be found to have abused its discretion when the reviewing court is firmly convinced that a mistake has been made. In re Bendectin, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). It is difficult to believe a mistake has certainly been made by the district court where there is no express authority to refute the district court's action. Accordingly, I would find that the district court did not abuse its discretion with its implicit denial of plaintiff's motion to substitute.
 
 
 39
 This court must review a district court's FED.R.CIV.P. 12(b)(1) or 12(h)(3) dismissal for lack of subject matter jurisdiction de novo. Ynclan v. Dep't of the Air Force, 943 F.2d 1388, 1390 (5th Cir.1991); Willis v. Sullivan, 931 F.2d 390, 395 (6th Cir.1991). A de novo review of the propriety of the district court's ruling requires this court to consider the merits of the motion anew and in its entirety. Choctaw Nation v. United States, 119 U.S. 1, 30, 7 S.Ct. 75, 91-92, 30 L.Ed. 306 (1886). My de novo review compels me to conclude that plaintiff's lack of standing deprived the district court of jurisdiction to hear his case. There is no authority for the proposition that the court had any obligation to "relate back" to the date plaintiff originally commenced suit in determining jurisdiction at the time of the challenge. Conversely, I would find the district court did not abuse its discretion by dismissing this action because the plain language of FED.R.CIV.P. 12 obliged it to do so.
 
 
 40
 I would AFFIRM the judgment of the district court.
 
 
 41
 BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.
 
 
 42
 I join in Judge Celebrezze's dissent, but write separately to note my own troubled belief that ERISA is a separate and distinct statutory scheme. Traditionally, the substitution of a party always has been the preferred method of reflecting a change in the named party who represented the interests of others. If the change in this case had taken place immediately upon the removal of one trustee and the concurrent substitution of another trustee, I would accept the argument advanced by the majority. However, that was not the case here. Mr. Corbin resigned on December 20, 1991. He was not replaced by Mr. Gard until February 25, 1992, a passage of some two months. To me this is not substitution, but resurrection. The difficulty I have with cases like this one is that they involve the potential expiration of a statute of limitations, and an uncertain benefit for employees who were the intended beneficiaries of the insurance plan in question. Under these circumstances, a stricter reading of the ERISA statute is warranted. To me, substitution means substitution, not postponement. The majority has itself distinguished the case of Blackmar v. Lichtenstein, 578 F.2d 1273 (8th Cir.1978), upon which it relies, and in which substitution by a successor trustee was allowed. In that case, unlike here, the departing trustee did not resign, nor was he relieved of responsibility in the litigation until after the successor trustee was appointed.
 
 
 43
 To me, at least, this case should be remanded to the district court for a determination of precisely what transpired, and who authorized the substitution of the successor trustee. I believe that the record, insofar as these issues are concerned, is totally devoid of support for the conclusion reached by the majority. I therefore respectfully dissent.
 
 
 
 [1]
 The original complaint in Blackmar asserted four causes of action, two of which were based on federal securities law and the others of which were pendent claims for relief under state law. See Blackmar v. Lichtenstein, 578 F.2d 1273, 1275 (8th Cir.1978). In granting the successor trustees' motion for substitution, the district court rejected an argument that the question of who the real parties in interest were was controlled by ERISA. See 468 F.Supp. at 374. The district court went on to say, however, that "[e]ven assuming ... that ERISA did apply to the determination of the real party in interest, the Court concludes that ERISA would not preclude substitution of movants herein." Id. (emphasis supplied)
 In affirming the order that substituted the successor trustees for Mr. Blackmar, the Court of Appeals for the Eighth Circuit noted that Sec. 502 of ERISA authorizes a fiduciary to sue for ERISA violations. 603 F.2d at 1310. The court of appeals went on to observe that "[o]nce Blackmar's successor trustees ... were appointed, [Blackmar] ceased to be a fiduciary and no longer had the capacity to sue for violations which may have occurred under this title." Id. It was the loss of the original trustee's standing to sue that was held to justify substitution of the successor trustees as parties plaintiff.
 
 
 [2]
 The supplemental brief filed by the plaintiff after the granting of his petition for rehearing en banc states that "[b]y the time the district judge dismissed this action, the statute had run as to the bulk of the issues raised in the litigation." The defendants have never taken issue with this statement
 The defendants do, however, vigorously assert that the interests of the plan participants and beneficiaries are not being prejudiced here because the plaintiffs' claims have never had any merit. But the district court did not have occasion to rule on the defendants' motion for summary judgment, and, given the present posture of the case, this court is obviously in no position to address the merits. The only question before us now is whether the district court erred in granting the defendants' motion to dismiss for lack of jurisdiction over the subject matter. We intimate no opinion, of course, as to how the merits of the case should ultimately be decided.
 
 
 [3]
 Although Rule 17(a) requires that every action be prosecuted in the name of the real party in interest, the rule also provides that a trustee, or a party authorized by statute, may sue in that person's own name without joining the party for whose benefit the action is brought
 
 
 [1]
 See Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 14 (2nd Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992)
 
 
 [2]
 FED.R.CIV.P. 25(c) states: "In case of transfer of interest, the action may be continued by or against the original party, unless the court ... directs the person to whom the interest is transferred to be substituted."
 
 
 [3]
 29 U.S.C. Sec. 1132(a)(3) provides: "A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of the subchapter or the terms of the plan;"
 
 
 [4]
 The district court's dismissal of the action for lack of standing implicitly denied plaintiff's motion to substitute